# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
September 13, 2000 Session

## STATE OF TENNESSEE v. WILLIE WAYNE BOYLAND

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 6270     Jon K. Blackwood, Judge**

---

**No. W1999-00634-CCA-R3-CD - Filed December 29, 2000**

---

Following a jury trial in the Hardeman County Circuit Court, Defendant was convicted of the offense of casual exchange of marijuana. On appeal, Defendant challenges the sufficiency of the evidence to sustain the conviction. He also asserts that the trial court erred by prohibiting Defendant from questioning a state witness about a civil warrant and judgment against the witness and that the trial court erred by overruling his objection to the State eliciting testimony from its primary witness regarding the witness' employment. We have reviewed the record on appeal and the briefs of the parties and find no reversible error. Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID G. HAYES, J., joined.

Jeannie Kaess, Bolivar, Tennessee, for the appellant, Willie Wayne Boyland.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; and Walt Freeland, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A Hardeman County jury convicted Defendant Willie Wayne Boyland of casual exchange and sentenced him to eleven months and twenty-nine days in jail. On appeal, Defendant raises three issues regarding the sufficiency of the evidence, his constitutional confrontation rights and the trial court's overruling of his objection to certain testimony given by the prosecution's primary witness, Patrick Perry. Before the start of trial, the trial judge granted the State's motion in limine to exclude evidence of a civil warrant issued against Patrick Perry. During direct examination of Patrick Perry, the trial court overruled defense counsel's objection to Perry's testimony regarding his employment status as a senior correctional officer with Corrections Corporation of America.

# I. FACTS

There is no transcript of the trial, but a statement of the evidence was approved by the trial court. Our recitation of facts is based upon what is contained in the statement of the evidence.

Officer Brian Moss of the Whiteville Police Department testified that on August 18, 1998 at 6:00 p.m., he met Patrick Perry, a confidential informant, in the parking lot behind the gymnasium of the Whiteville Elementary School. Officer Moss stated that he searched Patrick Perry and Perry's car for drugs. (Perry was driving an older model four-door silver Pontiac.) Then, Officer Moss gave Perry $20 so that Perry could buy some drugs. Officer Moss told Perry that he would pay Perry $50 for purchasing the drugs and $10 for gas. Additionally, Moss explained to Perry the possibility of Perry having to testify in court regarding the transaction. Moss claimed that he and Perry left the school parking lot at 6:40 p.m. Patrick Perry left the parking lot first and Officer Moss followed him. However Moss did not remember which route he and Perry took to get to the Defendant's house at 307 Jackson Street, and therefore, could not map the route.

When Perry and Officer Moss arrived at Defendant's house, Perry parked in the driveway, but Moss could not recall which driveway Perry parked in (there were two at the house). Moss drove up the road and turned on a side street and into an abandoned school, where he could watch the house. Moss saw some men in the yard and then he saw Perry talk to one man. Perry followed the man into the house and remained inside for about a minute and a half. Moss admitted in his testimony that he did not know what happened inside the house, that he did not see Willie Boyland, and that he did not know who sold the marijuana to Perry, other than by what Perry had told him.

Moss and Patrick Perry met back at the school at 7:00 p.m. Perry gave Officer Moss a bag of green leafy material. Perry told Moss that he had purchased the marijuana from Willie Boyland. Moss paid Perry $50.00 for making the purchase plus $10.00 for gas. Later, Officer Moss obtained a warrant charging Boyland with possession of marijuana with intent to sell. Moss swore that the facts in the warrant were true. Moss stated in the warrant that he told Patrick Perry to go to a house on Jackson Street "to purchase a controlled substance from Willie Boyland."

Officer Moss also admitted that in the preliminary hearing, he testified that he followed Perry to the house at 307 Jackson Street and drove on. Officer Moss testified at that time that he did not wait for Perry or watch what Perry did.

Patrick Perry testified that he worked for Corrections Corporation of America as a senior correctional officer. Perry stated that he agreed to attempt to buy some crack from a Willie Boyland. Approximately two days before the sale, Officer Moss took Perry by a house at 307 Jackson Street where Perry was supposed to make the purchase.

Perry claimed that on August 18, 1998, he met Officer Moss behind the gymnasium at Whiteville Elementary School. Officer Moss gave Perry $20.00 to buy some drugs. Officer Moss told Perry that if the transaction were successful, Moss would pay him $50.00 for the buy and $10.00

for gas. Perry stated that he also understood that the prosecution might require him to testify regarding the transaction.

Perry further testified that as he drove out of the school parking lot Officer Moss followed him. Perry pulled in front of the house and parked his silver Pontiac on the road. Some men were standing in the yard. Perry approached one man and told the man he was "looking for some yams" (according to Perry, "yams" was slang for cocaine). The man took Perry into the house and several men were in the living room. Perry saw the Defendant, Willie Boyland, and asked if he had any yams. The Defendant said that he did not have any yams, but he had some marijuana. So, Perry paid the Defendant $20.00 for the marijuana. Perry drove back to the elementary school and gave the marijuana to Officer Moss. In return, Moss paid Perry $50.00 for the buy and $10.00 for gas.

Perry admitted he did not remember how the interior of the house at 307 Jackson Street looked. Additionally, Perry admitted that he did not remember anything about the men in the house. Also, Perry testified that he was not making up a story about going to the Defendant's house to purchase drugs. Perry also stated that he did not pull in front of the house and then drive off before getting out. Further, Perry could not remember the route he took to get to the Defendant's house.

Special Agent Kay Sheriff of the Tennessee Bureau of Investigation testified that she analyzed the plant material submitted in this case and concluded it was marijuana.

Jerry Bowden testified that he was at the home of Anita Boyland (Defendant's sister) the day Patrick Perry came to the house. Jerry Bowden lived five houses down from Anita Boyland and went to school with Patrick Perry. Bowden stated that Perry drove up to Anita Boyland's yard in a silver Bonneville. Sometime after this, Bowden said that he noticed the same car parked at the Whiteville Police Department.

Bowden explained that when Perry drove in front of the house he asked for Willie Boyland. Bowden said that he thought that was unusual because everyone calls the Defendant "Wayne" Boyland. Bowden testified that several people were in the yard and one of them shouted, "Willie Boyland doesn't stay here." Bowden testified that Perry did not get out of his car, walk across the yard or go in the house. Instead, Perry drove off. Bowden admitted that he was one of Defendant's friends. Also, Bowden could not remember on what day these events occurred.

Jerome Jones, also a friend of Defendant, testified that he was at the home of Anita Boyland on the day something unusual happened. Jones explained that his mother lives at 210 Jackson Street, which is down the street from Defendant's sister's house at 307 Jackson Street. Jones said that after he finished visiting his mother, he stopped in the driveway at Anita Boyland's house to visit some of his friends. A man drove up in a gray, faded car. Jones claimed the driver asked if Willie Boyland was there, which Jones thought was odd because everyone calls the Defendant "Wayne" Boyland. Jones testified that someone said, "Willie Boyland doesn't live here," and another said "You need to get away." Jones asserted that the driver drove to the next intersection and turned

around to go back the way he came. Jones could not recall the date, month, or day of the week that this occurred.

Jones testified that he clocked the distance from the ball field behind Whiteville Elementary to Anita Boyland's house. The time was five (5) minutes and the distance was 1.7 miles. Jones explained that it would take a person ten (10) minutes to go to the house and back. Then, Jones testified that he took a circuitous route to see how long it would take, if someone drove around before going to the house. Jones asserted that it took him four (4) minutes to travel a distance of 2.0 miles. He stated that it would take approximately eight (8) minutes to take this circuitous route to the house and then back to the school.

Jones testified that he did not know why it took Patrick Perry twenty (20) minutes to drive to the house and back. Jones did not remember what day Perry pulled up in the yard.

The Defendant did not testify. At the close of the proof, the jury found the Defendant guilty of casual exchange. Subsequently, the trial court sentenced the Defendant to eleven (11) months and twenty-nine (29) days in jail.

## II. ANALYSIS

Defendant challenges his conviction for casual exchange. Specifically, Defendant alleges that the evidence was insufficient and that a rational trier of fact could not have found beyond a reasonable doubt that he was guilty of casual exchange. When an appellant challenges the sufficiency of the convicting evidence on appeal, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence, are resolved by the trier of fact, not this Court. Id. On appeal, this Court grants the State the strongest legitimate view of the evidence contained in the record plus all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Thus, the defendant has the burden of proving that the evidence was insufficient to support the verdict. Id.

Here, the Defendant asserts that a rational trier of fact could not have found him guilty based upon the testimony of Patrick Perry and Officer Brandon Moss. Defendant points to the inability of Patrick Perry to remember anything about the interior of Boyland's house, including the people who were supposedly in the house. Additionally, Defendant highlights the inconsistent testimony of Officer Brandon Moss. At the preliminary hearing Officer Moss testified that after he followed Perry to the house, he drove off and later met Perry back at Whiteville Elementary. However, at the trial, Officer Moss testified that he watched Perry go into the house and that Perry was inside for about one and a half minutes. The Defendant asserts that this testimony was insufficient corroborating

evidence regarding the drug transaction.  Finally, the Defendant contends that Patrick Perry's only motive in identifying him as the seller was so that Officer Moss would pay Perry the $50.00 for making a purchase plus $10.00 for gas.

Taking this evidence in the light most favorable to the State, we find that the evidence was sufficient to convict the Defendant of casual exchange.  While Defendant would have this Court weigh the evidence presented through the testimony of his witnesses, we must decline to do so.  This Court does not reweigh or reevaluate the evidence.  Cabbage, 571 S.W.2d at 835.  The jury resolves questions concerning the credibility and weight of the witnesses' testimony, not this court.  State v. Darnell, 905 S.W.2d 953, 961 (Tenn. Crim. App. 1995).  In this case, the jury resolved all questions of credibility in favor of the state.  Defendant is not entitled to relief on this issue.

Next, Defendant challenges the trial court's grant of the State's motion in limine prohibiting the Defendant from cross-examining  Patrick Perry about a civil warrant issued and judgment rendered against Perry.   The civil warrant charged that Perry owed Mayfield Grocery "on account" the amount $124.80, plus court costs in the amount of $68.50.  A judgment was rendered against Perry in the amount of $193.30.  It is the Defendant's theory that Perry needed the $60 promised to him by Officer Moss because he was not working and needed the money to pay Mayfield Grocery.  The statement of the evidence reflects that the Defendant's argument in the trial court on this issue was as follows:

> "The [arrest] warrant which charged the defendant with possession of a controlled substance stated that Officer Brandon Moss told the confidential informant to go to a particular house "to purchase a controlled substance from Willie Boyland."  The alleged sale was made three days after the confidential informant had been served with the civil warrant.  The jury could infer that Patrick Perry said he purchased the marijuana from the defendant because he needed the money: if he said he purchased from someone else, he would not be paid."

Contrary to Defendant's argument in the trial court, there is nothing in the record to indicate that Patrick Perry would not be paid if he had purchased drugs from someone other than the Defendant.  Assuming, arguendo, that it was error for the trial court to grant the State's motion in limine to prevent the Defendant from bringing out the civil warrant and judgment, we are unable to determine from the record presented to us that it was more than harmless error.  Defendant did not attempt to make an offer of proof outside the presence of the jury.  Failure to pay a debt of $124.80 does not equate with being destitute or a  willingness to commit perjury in order to obtain funds to pay that debt.  Patrick Perry may have had a reasonable explanation for the debt and an explanation for allowing a default judgment to be taken against him.  Therefore, Defendant is not entitled to relief on this issue.

Finally, Defendant asserts that the trial court erred by overruling his objection to Patrick Perry testifying about his current place of employment.  The statement of evidence indicates that Defendant objected on the grounds of relevance.  The determination of relevance or the probative

value of the evidence is within the discretion of the trial court, whose determination will not be overturned absent a showing of an abuse of discretion. <u>State v. Harris</u>, 839 S.W.2d 54, 66 (Tenn. 1992). This court has previously held that background information of a witness may be relevant. <u>State v. George Harvey Hudson</u>, Hamilton County, No. 03C01-9201-CR-9 (filed July 14, 1992 at Knoxville). We see no error in the trial court overruling the Defendant's objections on the grounds of relevance. Accordingly, the Defendant is not entitled to relief on this issue.

     The judgment of the trial court is affirmed.

                                                _____
                                                THOMAS T. WOODALL, JUDGE